```
                    UNITED STATES DISTRICT COURT
                     MIDDLE DISTRICT OF FLORIDA
                         FORT MYERS DIVISION
```

2P COMMERCIAL AGENCY S.R.O.,

                Plaintiff,

vs.                          Case No.   2:11-cv-652-FtM-29SPC

LEN FAMILANT,

                Defendant.
_____

**OPINION AND ORDER**

This matter comes before the Court on Defendant, Len A. Familant's Motion to Dismiss Complaint (Doc. #22) filed on March 13, 2012. Plaintiff 2P Commercial Agency, S.R.O., filed a response in opposition on March 21, 2012. (Doc. #24.) With leave of Court (Doc. #26), defendant Len A. Familant filed a reply in support of his motion. (Doc. #29.) For the reasons set forth below, the motion is denied.

**I.**

The Complaint alleges that plaintiff, 2P Commercial Agency, S.R.O., (2P Commercial or plaintiff) is a Czech Republic entity in the business of wholesale trade of mobile telephones on the global market. The Complaint alleges that SRT USA Inc.[1] (SRT) and defendant Len A. Familant (defendant or Familant) act as suppliers

---

[1]SRT was also a named defendant in this matter. However, on August 13, 2012, a default judgement was entered against this defendant. (Doc. #49.)

and purchasers of mobile phones, but acted as suppliers in this case.

On July 13, 2011, 2P Commercial made an offer for mobile phones in the form of a Purchase Order. The Purchase Order called for delivery no later than July 19, 2011. In the Purchase Order, 2P Commercial requested SRT's bank account information for purposes of making a 20% deposit totaling $55,360.00. Familant accepted the terms of the Purchase Order and subscribed his name on the "supplier" line. On the same day, Familant and SRT provided 2P Commercial with a Purchase Invoice which contained SRT's banking information. The Purchase Invoice also indicated that the goods must arrive on or before July 19, 2011.[2] The Purchase Invoice was signed by Familant. In conjunction with the Purchase Order, Familant executed a personal guarantee. The document provided a guarantee up to $300,000 if SRT failed to deliver goods or make payment.

On July 14, 2011, 2P Commercial attempted a wire transfer to SRT, but the transfer failed because plaintiff was provided with an incorrect account number. On July 19, 2011, 2P Commercial was informed that the transfer failed. The same day, 2P Commercial obtained the correct account number and initiated the transfer of

---

[2]Because the Purchase Invoice, attached to the Complaint, is dated July 13, 2011, the Court assumes that the delivery date of July 19, 2010, reflected in the Purchase Invoice, was a typo. (Doc. #1-1, p. 2.)

the 20% deposit. Thereafter, SRT and Familant failed to deliver the goods. 2P Commercial notified defendants of their breach and provided an opportunity to cure, but defendants were unable to cure their defective performance. On August 8, 2011, 2P Commercial notified the defendants of their decision to avoid the contract. 2P Commercial ultimately covered the goods from a different supplier at a higher price. SRT made a partial restitution of $5,000 to 2P Commercial but has not returned the remaining deposit amount. Familant never compensated 2P Commercial for SRT's failure to deliver the goods, despite the existence of the personal guarantee.

As a result, 2P Commercial initiated this action asserting a claim for: breach of contract under the United Nations Convention on Contracts for the International Sale of Goods[3] (CISG)(Count I); violation of the Florida Deceptive and Unfair Trade Practices Act (FDUTPA)(Count II); and breach of personal guarantee (Count III). The Complaint alleges federal question jurisdiction over Count One pursuant to 28 U.S.C. § 1331, and supplemental jurisdiction over Counts II and III pursuant to 28 U.S.C. § 1367.

Familant filed the subject motion to dismiss seeking to dismiss the Complaint because he asserts the CISG does not apply to

---

[3]The CISG applies to contracts for the sale of goods between parties when the States are Contracting States. <u>United Nations: Conference on Contracts for the Int'l Sale of Goods</u>, Apt. 10, 1980, 19 I.L.M. 668, 672 (1980). Both the Czech Republic and the United States are signatories.

him, and therefore Count I should be dismissed. Familant asserts the Court should decline supplemental jurisdiction over the remaining claims. In the alternative, Familant asserts that Counts II and III fail to state a claim upon which relief may be granted under Fed. R. Civ. P. 12(b)(6).[4]

**II.**

Under Federal Rule of Civil Procedure 8(a)(2), a Complaint must contain a "short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). This obligation "requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007)(citation omitted). To survive dismissal, the factual allegations must be "plausible" and "must be enough to raise a right to relief above the speculative level." Id. at 555. See also Edwards v. Prime Inc., 602 F.3d 1276, 1291 (11th Cir. 2010). This is "more than an unadorned, the-defendant-unlawfully-harmed-me accusation." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009)(citations omitted).

In deciding a Rule 12(b)(6) motion to dismiss, the Court must accept all factual allegations in a complaint as true and take them in the light most favorable to plaintiff, Erickson v. Pardus, 551

---

[4] The Court notes that Familant has filed a motion for summary judgment on the same bases as his motion to dismiss. (Doc. #55.) The motion for summary judgment remains under submission and will be resolved under separate order.

U.S. 89 (2007), but "[l]egal conclusions without adequate factual support are entitled to no assumption of truth," <u>Mamani v. Berzain</u>, 654 F.3d 1148, 1153 (11th Cir. 2011)(citations omitted). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." <u>Iqbal</u>, 556 U.S. at 678. "Factual allegations that are merely consistent with a defendant's liability fall short of being facially plausible." <u>Chaparro v. Carnival Corp.</u>, 693 F.3d 1333, 1337 (11th Cir. 2012)(internal quotation marks and citations omitted). Thus, the Court engages in a two-step approach: "When there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief." <u>Iqbal</u>, 556 U.S. at 679.

### III.

**A. Count I**

Familant asserts that he is outside the scope of the CISG because it applies only to "buyers" and "sellers" in the international sale of goods and his only role "was on behalf of, or as an agent of, SRT, the seller." (Doc. #22, p. 6.) Familant further asserts that even if plaintiff had asserted that he was a seller, the documents attached to the Complaint negate that assertion. In response, 2P Commercial asserts that the Complaint clearly alleges that Familant was a "purchaser", "merchant", "supplier", "SRT's principal", and/or SRT's "agent" and therefore

-5-

has at least plausibly alleged that Familant has liability under the CISG. 2P Commercial further alleges that Familant's liability as a supplier or seller is imputed on the theory of agency and partnership, particularly under Florida law.

Article 1 of the CISG provides, in relevant part, that it "applies to contracts of sale of goods between parties whose places of business are in different States . . . when the States are Contracting States." Article 4 provides, in relevant part, that it "governs only . . . the formation of the contract and *the rights and obligations of the seller and the buyer* arising from such a contract." (Emphasis added). No Court of Appeals have addressed the question of how far Article 4 extends, but district courts have found that the provision "excludes from the scope of the CISG the rights and obligations of all parties that are neither the immediate buyer nor the immediate seller." Beth Schiffer Fine Photographic Arts, Inc. v. Colex Imaging, Inc., No. 10-05321, 2012 WL 924380, at *7 (March 19, 2012); see also Cedar Petrochemicals, Inc. v. Dongbu Hannong Chem. Co., Ltd., No. 06-cv-3972, 2007 WL 2059239, at *3 (S.D. N.Y. Jul. 19, 2007); American Mint LLC v. GOSoftware, Inc., No. 1:05-cv-650, 2005 WL 2021248, at *2-3 (M.D. Pa. Aug. 16, 2005).

Familant seemingly relies on the fact that the Complaint alleges that SRT is a seller as preclusive of establishing that Familant, too, was a seller. Yet Familant points to no authority

which suggests that for the CISG to apply, there can only be <u>one</u> seller. Thus, the Court finds no basis to conclude that just because SRT is alleged to be a seller, 2P Commercial should not be permitted from alleging that Familant was also a seller in the contested transaction.

Here, 2P Commercial sued Familant in both his individual capacity and "in his capacity as a *merchant* and agent for defendant SRT." (Doc. #1, ¶3)(emphasis added). Familant is also named as a "merchant" elsewhere in the complaint. (<u>See</u> <u>id.</u> ¶16.) Allegations in the Complaint also name Familant as a "supplier" (<u>id.</u> ¶11) and as an "agent" of SRT (<u>id.</u> ¶¶ 3, 17.) In the alternative, 2P Commercial asserts that Familant was a "principal" of SRT.[5] (<u>Id.</u> ¶13.) Indeed, the Purchase Order attached to the Complaint (Doc. #1-1, p.1) lists SRT as a "supplier" on the top of the document, but also bears the signature of defendant with the title "supplier" on the bottom of the page.

In addition, the Complaint alleges obligations on behalf of Familant which are consistent with a "seller's" obligation under the CISG. As both parties concede, the CISG does not define "seller" or "buyer." Nonetheless, what the CISG does provide are specific obligations of a buyer and a seller. In particular,

---

[5] Under the Federal Rules of Civil Procedure, a party is entitled to plead in the alternative. Rule 8 provides in relevant part "[a] party may set out 2 or more statements of a claim or defense alternatively or hypothetically . . . regardless of consistency." Fed. R. Civ. P. 8(d)(2)-(3).

Article 30 sets forth the primary obligations of the seller, and states "[t]he seller must deliver the goods, hand over any documents relating to them and transfer the property in the goods, as required by the contract and this convention."[6]

Here, the Complaint alleges that "*[d]efendants* accepted the monies, but never delivered the promised goods in accordance with the contract's terms." (Doc. #1, ¶20)(emphasis added). Thus, the Complaint alleges that both Familant and SRT failed to deliver the goods, an express obligation of a seller under the CISG. Accordingly, accepting the allegations as true and in the light most favorable to the plaintiff, 2P Commercial has pled enough facts that give rise to an inference that Familant, in addition to SRT, was a "seller" for purposes of the CISG. The motion to dismiss on this ground is denied.

**B.  Count II**

Familant next asserts that Count II, which is brought pursuant to FDUTPA, fails to state a cause of action because foreign citizens, like 2P Commercial, may not avail itself of its protections. In response, 2P Commercial asserts that FDUTPA itself has no express provisions which limits its applications only to in-

---

[6]Articles 31-33 provide specific obligations on behalf of the seller to deliver the goods and Article 34 specifically deals with the seller's obligations to hand over the documents. Mutual obligations on behalf of both the buyer and the seller are provided for elsewhere in the CISG.

state consumers, and therefore it has properly asserted a FDUTPA claim.

Florida courts are split on whether the protections of FDUTPA extend to out-of-state consumers. Compare OCE Printing Sys. USA v. Mailers Data Serv., Inc., 760 So.2d 1037, 1042 (Fla. 2d DCA 2000)("Other states can protect their own residents . . . . [O]nly in-state consumers can pursue a valid claim under [FDUTPA].") with Millennium Commc'n & Fulfillment, Inc. v. Office of Attorney Gen., Dept. of Legal Affairs, State of Fla., 761 So.2d 1256, 1262 (Fla. 3d DCA 2000)("[W]here the allegations . . . reflect that the offending conduct occurred entirely within this state, we can discern no legislative intent for the Department to be precluded from taking corrective measures under FDUTPA even where those persons affected by the conduct reside outside of the state.") There is no Florida Supreme Court decision resolving this divergence of authority. At least one federal district court has held that a foreign corporation could maintain a FDUTPA claim. See Barnext Offshore, Ltd. v. Ferretti Group, USA, Inc., No. 10-23869-CIV, 2012 WL 1570057 at *5 (S.D. Fla. May 2, 2011)

The Court finds that Millennium Commc'n & Fulfillment, Inc. more appropriately reflects both the text of FDUTPA and its enumerated purpose. The express language of FDUTPA does not include any "geographical or residential restrictions." Barnext Offshore, Ltd., 2012 WL 1570057 (S.D. Fla. May 2, 2011) quoting

Millennium Commc'n & Fulfillment, Inc., 761 So.3d at 1262. In addition, one of the three enumerated purposes of FDUTPA is "[t]o protect the consuming public and legitimate business enterprises from those who engage in unfair methods of competition, or unconscionable, deceptive, or unfair acts or practices in the conduct of any trade or commerce." Fla. Stat. § 501.202(2). FDUTPA does not specifically limit "consuming public" or "legitimate business enterprises" to citizens or residents of Florida. Indeed, that statute defines "consumer" as "an individual; child, by and through its parent or legal guardian; business; firm; association; joint venture; partnership; estate; trust; business trust; syndicate; fiduciary; corporation; any commercial entity, however denominated; or any other group or combination." Fla Stat. § 501.203(7). "Trade or commerce" is defined as "the advertising, soliciting, providing, offering, or distributing, whether by sale, rental, or otherwise, of any good or service or any property, whether tangible or intangible, or any other article, commodity, or thing of value, wherever situated." Fla. Stat. § 501.203(8). Neither of these definitions provide any residential or citizen limitations. Importantly, defendant makes no allegations that the alleged fraudulent conduct alleged in Count II occurred anywhere other than Florida. Accordingly, the motion to dismiss on this ground is denied.

**C.  Count III**

Familant also seeks to dismiss Count III because the guarantee fails for lack of consideration.  Defendant alleges that the Purchase Order and Purchase Invoice are both dated prior to the Letter of Guarantee and therefore it "could not serve as the inducement for the Plaintiff's acquiescence in the transaction since the transaction/contract was consummated prior to the date of the guarantee." (Doc. #22, p. 10.)  Further, Familant alleges that the guarantee is too vague, indefinite, and uncertain to enforce. Specifically, he asserts that the guarantee is nearly impossible to identify what the condition is for the guaranty, what the trigger is for a breach of the guaranty, and what the remedy or obligation results in the event of a breach of that contract.  Plaintiff argues to the contrary.

A guarantee is a collateral promise to answer for the debt or obligation of another.  Federal Deposit Ins. Corp. v. Univ. Anclote, Inc., 764 F.2d 804, 806 (11th Cir. 1985).  Under Florida law, guaranty contracts are subject to applicable contract rules. Warner v. Caldwell, 354 So.2d 91, 96 (Fla. App. 3d D.C.A. 1977). Under Florida law, the elements of a contract are offer, acceptance, and consideration.  See Air Products and Chemicals, Inc. v. Louisiana Land Exploration Co., 806 F.2d 1524, 1529 (11th Cir. 1986).

The Court declines to determine whether the personal guarantee is too vague to be given effect. Even assuming that the personal guarantee is vague on its face, an ambiguous personal guarantee does not necessarily result in a void guarantee. As the Eleventh Circuit recently stated, "[i]n Florida, [i]t is a fundamental tenet of contract law that a phrase in a contract is ambiguous only when it is of uncertain meaning, and may be fairly understood in more ways than one. In the event of such an ambiguity, a trial court is authorized to admit parol evidence to explain the words used and how the contracting parties intended them to be interpreted." Solmay Investments, Ltd. v. Banco Santander S.A., 672 F.3d 981 (11th Cir. 2012)(quotation marks and internal citations omitted) quoting Emergency Assocs. of Tampa, P.A. v. Sassano, 664 So.2d 1000, 1002 (Fla. 2d DCA 1995). Therefore, even if vague on its face, the personal guarantee may nevertheless be given effect.

Defendant's argument that the "transaction/contract was consummated prior to the date of the guarantee" and therefore the personal guarantee fails for want of consideration is unavailing. The personal guarantee is signed July 18, 2011. (Doc. #1-2.) Indeed, this date is five (5) days after the dates contained in the various Purchase Orders and Invoice Orders attached to the Complaint. (See generally, Doc. #1-1.) Nonetheless, the Complaint specifically alleges the 20% deposit, although attempted on July 14, 2011, was not fully consummated until July 19, 2011, one day

after the personal guarantee was executed. Accordingly, The motion to dismiss on these grounds is denied.

Accordingly, it is now

**ORDERED:**

1. Defendant, Len A. Familant's Motion to Dismiss Complaint (Doc. #22) is **DENIED**.

2. Defendant Len A. Familant shall file an Answer within **fourteen (14) days** of the entry of this Opinion and Order.

**DONE AND ORDERED** at Fort Myers, Florida, this __19th__ day of December, 2012.

JOHN E. STEELE
United States District Judge

Copies:

Counsel of record