```
                 UNITED STATES DISTRICT COURT
                  MIDDLE DISTRICT OF FLORIDA
                      FORT MYERS DIVISION
```

2P COMMERCIAL AGENCY S.R.O. ,

              Plaintiff,

vs.                                  Case No.   2:11-cv-652-FtM-29SPC

SRT USA, INC., LEN FAMILANT,

              Defendants.
_____

## OPINION AND ORDER

This matter comes before the Court on Defendant, Len A. Familant's Dispositive Motion for Summary Judgment and Incorporated Memorandum of Law (Doc. #55) filed on September 17, 2012.[1] Plaintiff filed a memorandum in opposition on October 1, 2012. (Doc. #61.)  For the reasons set forth below, the motion is denied.

**I.**

The following facts are undisputed.  Plaintiff 2P Commercial Agency S.R.O. (2P Commercial or plaintiff) is an entity existing under the laws of the Czech Republic, with its principal place of business in Prague, Czech Republic.  2P Commercial is engaged in the business of the wholesale trade of mobile telephones on the global market.  Prior to the transaction at issue, 2P Commercial

---

[1] In support of the motion, Len A. Familant also filed an Affidavit of Scott A. Beatty with corresponding exhibits on September 17, 2012.  (Doc. #56.)

and SRT USA, Inc. (SRT)[2] and Len Familant (Familant or defendant) had never conducted any business together.  Michael Bocchino (Bocchino)[3] introduced Familant to a corporate representative for 2P Commercial, Alexander Roshal (Roshal).

Familant advised Roshal that he could obtain Apple iPhones with European specifications at a price that was lower than the then-current price on the market for such iPhones.  Ultimately, a Purchase Order was drafted for the purchase of 400 iPhones.  The Purchase Order lists the supplier as "SRT USA, Inc." and the "Good Sender" as "SRT USA, Inc."  The Purchase Order is dated July 13, 2011, listed the date for delivery to Prague as July 19, 2011, and was signed by both Roshal and Familant.  On the same day, a Purchase Invoice was prepared on SRT letterhead which listed bank information for making an initial deposit of $55,360.00.  On July 14, 2011, 2P Commercial initiated a wire transfer to the bank account listed on the Purchase Invoice.  The deposit was not consummated, however, because the banking information listed on the Purchase Invoice was incorrect.  On July 19, 2011, the deposit was consummated in the correct bank account.

---

[2] SRT was also a named defendant in this matter.  However, on August 13, 2012, an amended default judgement was entered against this defendant.  (Doc. #63.)

[3] Whether or not Michael Bocchino was a business partner of 2P Commercial is disputed by the parties.

The iPhones were not delivered on the July 19, 2011, date for delivery listed in the Purchase Order. The parties agree that 2P Commercial did not object to accepting the goods if they were delivered on July 26, July 27, July 29, 2011, or the week of August 1, 2011. No delivery was made and on either August 8, 2011, or August 10, 2011,[4] 2P Commercial notified the defendants that the original order was being cancelled. Nonetheless, 2P Commercial again agreed to accept shipment between August 13, and August 15, 2011. Ultimately, the goods were never received by 2P Commercial. SRT returned $5,000.00 of the deposit to 2P Commercial, but has not returned the remaining deposit.

Around the time that the parties entered into the purchase agreement, Familant executed a personal guarantee.[5] The document provided a guarantee up to $300,000.00 if SRT failed to deliver the goods or make payment. Although the iPhones were never delivered to 2P Commercial, Familant has not honored the personal guarantee (he asserts that it is invalid).

2P Commercial initiated this action asserting a claim for: breach of contract under the United Nations Convention on Contracts for the International Sale of Goods[6] (CISG)(Count I); violation of

---

[4] Compare (Doc. #61, p. 5), with (Doc. #55, p. 7.)

[5] As discussed in further detail in Section III(C)(1) below, it is unclear when the guarantee was actually executed.

[6] The CISG applies to contracts for the sale of goods between
(continued...)

the Florida Deceptive and Unfair Trade Practices Act (FDUTPA)(Count II); and breach of personal guarantee (Count III). Familant seeks summary judgment in his favor on all three counts. 2P Commercial opposes the motion.

**II.**

Summary judgment is appropriate only when the Court is satisfied that "there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). An issue is "genuine" if there is sufficient evidence such that a reasonable jury could return a verdict for either party. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). A fact is "material" if it may affect the outcome of the suit under governing law. Id.

The moving party bears the burden of identifying those portions of the pleadings, depositions, answers to interrogatories, admissions, and/or affidavits which it believes demonstrate the absence of a genuine issue of material fact. Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986); Rice-Lamar v. City of Fort Lauderdale, 232 F.3d 836, 840 (11th Cir. 2000). In order to avoid the entry of summary judgment, a party faced with a properly supported summary judgment motion must come forward with extrinsic

---

[6](...continued)
parties when the States are Contracting States. United Nations: Conference on Contracts for the Int'l Sale of Goods, Apr. 10, 1980, 19 I.L.M. 668, 672 (1980). Both the Czech Republic and the United States are signatories.

evidence, i.e., affidavits, depositions, answers to interrogatories, and/or admissions, which are sufficient to establish the existence of the essential elements to that party's case, and the elements on which that party will bear the burden of proof at trial. Celotex Corp. v. Catrett, 477 U.S. at 322; Hilburn v. Murata Elecs. N. Am., Inc., 181 F.3d 1220, 1225 (11th Cir. 1999).

In ruling on a motion for summary judgment, the Court is required to consider the evidence in the light most favorable to the nonmoving party. Johnson v. Booker T. Washington Broad. Serv., Inc., 234 F.3d 501, 507 (11th Cir. 2000); Jaques v. Kendrick, 43 F.3d 628, 630 (11th Cir. 1995). The Court does not weigh conflicting evidence or make credibility determinations. Hilburn v. Murata Elecs. N. Am., Inc., 181 F.3d at 1225. "If the record presents factual issues, the court must not decide them; it must deny the motion and proceed to trial." Tullius v. Albright, 240 F.3d 1317, 1320 (11th Cir. 2001)(citing Clemons v. Dougherty Cnty., 684 F.2d 1365, 1369 (11th Cir. 1982)). However, "[t]he mere existence of some factual dispute will not defeat summary judgment unless that factual dispute is material to an issue affecting the outcome of the case." McCormick v. City of Fort Lauderdale, 333 F.3d 1234, 1243 (11th Cir. 2003). A genuine issue of material fact exists only if there is sufficient evidence favoring the nonmoving party for a reasonable jury to return a verdict in its favor. Id.

**III.**

**A. Count I**

Count I asserts a claim for breach of contract under the CISG. Familant asserts that summary judgment is appropriate because: (1) the CISG is not applicable to him because he was not a buyer or seller in the contested transaction; (2) the contract is not enforceable under the CISG because it lacks the requisite specificity; and (3) 2P Commercial is precluded from bringing their claim because it breached the terms of the CISG upon breach of the underlying contract. 2P Commercial argues to the contrary.

**1. Whether Familant was a "Seller" for Purposes of the CISG**

Familant asserts that he was not a buyer or a seller in this transaction and that "[t]he contract was between SRT and the Plaintiff, and any conduct of Mr. Familant was on behalf of, or as an agent of, SRT, the seller." (Doc. #55, p. 11.) Familant asserts that because 2P Commercial has admitted that SRT was a seller in the transaction, he cannot also be a seller. 2P Commercial asserts that there are genuine issues of material fact as to whether SRT was the only seller in the transaction, and whether Familant was the principal seller in the transaction and SRT was the agent of Familant.

As the Court has previously found, although plaintiff has both pled, and conceded, that SRT was a seller in this transaction, this does not preclude a finding that Familant, too, was a seller. (See

generally, Doc. #67, p. 7.)  Therefore, defendant's contention that because SRT is a seller in the transaction, Familant could not have been a seller, is without merit.

The Court further finds that there is a genuine issue of material fact as to whether or not Familant was a seller, or at least held himself out to be a seller, in the contested transaction. Familant's role in the contested transaction, as well as his relationship with SRT, is unclear from the evidence.  For example, some evidence provided to the Court suggests that Familant attempted to sell the iPhones to 2P Commercial personally through his own company.[7]  Other evidence suggests that both Familant and SRT were the seller.[8]   As such, there is a genuine issue of material fact as to Familant's role in the contested transaction. Summary judgment on this basis is denied.

### 2. Whether the Contract is Enforceable Under the CISG

Familant further avers that Count I fails because it is unenforceable under the CISG.  Specifically, Familant contends that

---

[7]For example, in response to an email from plaintiff asking "[w]hat have u to do with cell phone business? Is it hobby? Or what? U run company?", Familant stated "I started a company that is now called Simplexity, LLC and they are the largest online seller in the US of activated wireless handsets, tablets and PDA's. I've been in wireless almost 20 years no myself, and partner that I work with has also been in wireless for almost 20 years too." (Doc. #61-1, p. 66)(corrections to quotations omitted).

[8]For example, on July 20, 2011, Roshal sent an e-mail to Len regarding 2P Commercial's "responsibility to you *and* SRT . . ." (Doc. #56-1, p. 98)(emphasis added).

although the original Purchase Order and Purchase Invoice obligated delivery in Prague by July 19, 2011, the actual deposit in SRT's account was not made until July 19, 2011, the date of mandated delivery. Familant asserts that because plaintiff did not cancel the contract on July 19, and subsequently agreed to later delivery, there was no definite date for delivery under the contract. Familant asserts that delivery is an essential term of a contract under Article 19(3) of the CISG, and without it, the contract is not enforceable.

Defendant's reliance on Section 19(3) is misplaced. Section 19(3) falls under Part II of the CISG, which is concerned with formation of the contract. Section 19(3) provides that:

> Additional or different terms relating, among other things, to the price, payment, quality and quantity of the goods, place and time of delivery, extent of one party's ability to the other or the settlement of disputes are considered to alter the terms of the *offer* materially.

(Emphasis added). There is no dispute between the parties in relation to the formation of the contract. Indeed, Familant concedes that the contract entered into by the parties provided for delivery on July 19, 2011, and he makes no argument that there was any dispute as to this date. He also does not dispute that the goods were not delivered on July 19, 2011. Rather, Familant argues that plaintiff's agreement to accept late delivery materially altered an essential term of the contract. This contention is without merit as plaintiff's willingness to accept untimely

delivery of the goods was an exercise of 2P Commercial's rights under the CISG upon breach of the contract. Section III of the CISG relates to a buyer's remedies for breach of contract by the seller. Section III, Article 47 provides in relevant part, "(1) The buyer may fix an additional period of time of reasonable length for performance by the seller of his obligations." Accordingly, the fact that 2P Commercial was willing to accept delivery of the purchased goods after July 19, 2011, does not demonstrate that there were any issues relating to contract formation, and therefore plaintiff's assertion that defendant violated Article 19(3) of the CISG is without merit. Summary Judgment on this basis is denied.

**3. Whether 2P Commercial Breached the Contract Under the CISG**

Familant recognizes that Article 47 provides 2P Commercial with a remedy for breach by permitting an additional period of time for performance, but asserts that 2P Commercial did not strictly comply with the provisions of this Article, and therefore cannot maintain its claim for breach of contract. Specifically, Familant argues that Article 47 requires a fixed date for untimely performance and that "precatory language" concerning untimely delivery is insufficient.[9] (Doc. #55, p. 14.)

---

[9] In support, Familant cites to the article, John C. Duncan, Jr., <u>Nachfirst was ist? Thinking Globally and Acting Locally: Considering Time Extension Principles of the U.N. Convention on Contracts for the International Sale of Goods in Revising the Uniform Commercial Code</u>, 2000 Brigham University L. Rev. 1363, 1382, which provides in relevant part:

(continued...)

Familant's contention is without merit. Familant cites to no "precatory language" among the parties regarding late delivery. Furthermore, in his motion for summary judgment, Familant provides specific dates that 2P Commercial was willing to accept the goods, including July 26, 27, and 29, 2011. (Doc. #55, p. 6.) Familant makes no argument that this time frame was unreasonable under the CISG. Summary judgment on this basis is denied.[10]

**B.   Count II**

Count II asserts a claim for violation of FDUTPA. Familant asserts that summary judgment is appropriate because: (1) FDUTPA is not applicable to plaintiffs who are not United States citizens; (2) 2P Commercial has impermissibly attempted to convert a breach of contract claim into an alleged violation of FDUTPA; and (3)

---

[9](...continued)
[W]hen the party fixes additional time, a demand for performance must be made. For example, in the case of delay in delivery by the seller, the buyer may state to the seller, 'you have until May 1 to deliver the goods.' Precatory language, such as "I hope delivery will be made by May 1,' is not a sufficient demand. On the other hand, it is not necessary that the party demanding performance threaten to refuse to accept performance after the time fixed for performance.

Id.

[10]Because the Court denies summary judgment with respect to Count I, the Court need not address Familant's argument that if Count I is dismissed, the Court should not exercise supplemental jurisdiction over Counts II and III.

there is no evidence of any deceptive statements or conduct by Familant that caused any damages.

### 1. Whether FDUTPA Applies to Plaintiff's Claims

In its Opinion and Order on Familant's Motion to Dismiss, the Court addressed Familant's assertion that FDUTPA does not apply to 2P Commercial because it is a foreign entity. The Court determined that FDUTPA's protections extend to out of state plaintiffs. (See Doc. #67, pp. 8-10.) Nothing has changed. Accordingly, summary judgment on this basis is denied.

### 2. Whether 2P Commercial Has Impermissibly Converted a Breach of Contract Claim for Violations of FDUTPA

Familant asserts that Count II alleges a cause of action for breach of contract under the disguise of a claim under FDUTPA. Familant asserts that this is improper, and therefore summary judgment should be granted in his favor.

The Florida Deceptive and Unfair Trade Practices Act (FDUTPA) provides a civil cause of action for "[u]nfair methods of competition, unconscionable acts or practices, and unfair or deceptive acts or practices in the conduct of any trade or commerce." Fla. Stat. § 501.204(1). "A consumer claim for damages under FDUTPA has three elements: (1) a deceptive act or unfair practice; (2) causation; and (3) actual damages." City First Mortg. Corp. v. Barton, 988 So. 2d 86 (Fla. 4th DCA 2008)(internal citations and quotation omitted). See also KC Leisure, Inc. v. Haber, 972 So. 2d 1069, 1073-74 (Fla. 5th DCA 2008). A "deceptive

act" is "one that is likely to mislead consumers and an unfair practice is one that offends established public policy and one that is immoral, unethical, oppressive, unscrupulous, or substantially injurious to consumers." Washington v. LaSalle Bank Nat'l Ass'n., 817 F. Supp. 2d 1345, 1350 (S.D. Fla. 2011). Further, causation must be direct, rather than remote or speculative. See e.g., Fla. Stat. § 501.211(2)("In any action brought by a person who has suffered a loss as a result of a violation of this part . . . may recover actual damages.") "Actual damages" under the statute must directly flow from the recovery of nominal damages, speculative losses, or compensation for subjective feelings of disappointment." City First Mortg. Corp., 988 So. 2d at 86 (internal citations omitted).

Although Familant styles his argument as one in favor of summary judgment, his argument is essentially that plaintiff has failed to state a claim for FDUTPA. In any event, the Court finds that Familant's contention that 2P Commercial has not set forth a claim under FDUTPA is without merit. Count II makes specific allegations that Familant induced 2P into making a contract for the purchase of goods although he had no intention of delivering the goods. Further, Count II alleges that Familant made written and oral promises that he could deliver the promised goods although he never had the capacity to do so. Certainly, if true, this is behavior that is likely to mislead consumers within the meaning of

FDUTPA. Count II further alleges that plaintiff entered into a contract for the goods, paid a deposit for the goods, and the goods were not delivered, resulting in a financial loss of over $55,000.00. (See generally, Doc. #1, pp. 6-7.) Accordingly, 2P Commercial has pled a deceptive act or unfair practice, causation, and actual damages.

### 3. Whether 2P Has Presented Evidence of Deceptive Statements Causing Damages

Familant further asserts that there is no evidence of any deceptive statements made by Familant that resulted in damages to 2P Commercial. The Court disagrees. Plaintiff has produced evidence of false representations by Familant, including that he was part of the Apple distribution system, which defendant later admitted to be false. Compare e.g., (Doc. #61-1, p. 79) with (Doc. #61-5, p. 13.) Further, plaintiff provided evidence of statements by Familant to 2P Commercial that defendant was actively engaged in overseas trade, although it was later discovered that the contested transaction was Familant's first overseas mobile phones sale. (Compare, e.g., Doc. #61-1, p. 18 with Doc. #61-5, p. 23) This evidence could give rise to a finding that Familant made fraudulent statements to 2P Commercial to induce it to contract for the sale of iPhones although Familant lacked the capacity to deliver on the contract.[11] Accordingly, summary judgment is denied.

---

[11]The Court, of course, makes no determination as to whether
(continued...)

**C. Count III**

Count III asserts a claim for breach of personal guarantee. The parties agree that Familant signed a Letter of Guarantee which guaranteed that in the event SRT failed to deliver the purchased goods, he would compensate 2P Commercial up to $300,000.00. The signed letter of guarantee is attached to the Complaint. (Doc. #1-2, p.1.) Familant asserts that the personal guarantee is not enforceable and summary judgment is appropriate because: (1) the guarantee suffers from lack of consideration; (2) the guarantee was fraudulently induced, and (3) the guarantee fails due to ambiguity and indefiniteness.

**1. Lack of Consideration**

Familant asserts that because the guaranty was not entered into until after the plaintiff had entered into the transaction and paid the deposit, there was no consideration for the personal guarantee. Familant asserts that a personal guaranty made after the principal contract and not part of the same transaction must be supported by new consideration. In response, 2P Commercial asserts that no new consideration was required to support the guarantee and it was not necessary for the underlying transaction and the personal guaranty to be executed contemporaneously.

---

[11](...continued)
Familant actually violated FDUTPA.

A personal guaranty is a contract which must be supported by consideration to be enforceable. Where a guaranty is executed subsequent to the principal contract, and was not a part of that transaction, the guaranty must be supported by new consideration. <u>Texaco, Inc. v. Giltak Corp.</u>, 492 So. 2d 812 (Fla. 1st DCA 1986). The question therefore is whether the guaranty was part of the principal contract.

It is unclear when Familant executed the personal guarantee. The personal guaranty at issue is attached to the Complaint and indicates that it was signed on July 18, 2011. (Doc. 1-2, p. 1.) E-mail correspondence between the parties, however, suggests that the letter of guarantee was not signed until after this date. For example, on July 19, 2011, Roshal e-mailed Familant stating that the personal guaranty needed to be signed. (Doc. #56-1, p. 62.) E-mails concerning whether or not Familant should execute the personal guaranty continued through July 20, 2012, and fail to demonstrate when Familant actually signed the document. (<u>Id.</u> at pp.62-72.) What is clear is that Familant did not sign the personal guarantee until after the Purchase Order and Purchase Invoice were executed.

It is also unclear when the obligation to sign the personal guaranty originally arose. As noted above, if a personal guaranty is executed subsequent to a principal contract, and was not a part of that contract, then it must be supported by new consideration.

-15-

Thus, if the guaranty was a part of the original contract, no new consideration was necessary. It is unclear from the record whether the guaranty obligation arose as part of the underlying transaction or as a result of the failure of the defendants to deliver the iPhones on July 19, 2011. Without knowledge as to when the guaranty requirement first arose, the Court is without sufficient knowledge to determine whether the subsequently executed Letter of Guarantee necessitated additional consideration. Therefore, summary judgment on this basis is denied.

### 2. Fraudulent Inducement

Familant asserts that he was fraudulently induced to sign the Letter of Guarantee. In support, he provides several e-mails between the parties in which Roshal and Bocchino informed Familant that the signing of the guarantee was a formality, was unenforceable, and that Familant would not be taken to Court based on the guarantee. Familant further asserts that he was fraudulently induced to sign the letter of guarantee because Roshal falsely stated that he was a lawyer in Canada and that the letter of guaranty was not enforceable.

The elements of a claim for fraudulent inducement are: "(1) a false statement of material fact; (2) the maker of the false statement knew or should have known of the falsity of the statement; (3) the maker intended that the false statement induce another's reliance; and (4) the other party justifiably relied on

the false statement to its detriment." Preto v. Smook, Inc., 97 So. 3d 916 (Fla. 4th DCA 2012), quoting Shakespeare Found., Inc. v. Jackson, 61 So. 3d 1194, 1199 n.1 (Fla. 1st DCA 2011). Generally, the false statement of material fact necessary to establish fraud must concern a past or existing fact. Id. citing Gemini Inventors III, L.P. v. Nunez, 78 So. 3d 94, 97 (Fla. 3d DCA 2012).

As the moving party, Familant has the burden of demonstrating that summary judgment is appropriate. However, Familant makes no attempt to demonstrate that all of the elements of fraudulent inducement have been met. In particular, Familant makes no argument, and otherwise provides no reason for the Court to conclude, that his reliance on Roshal and Bocchino's assertions that the personal guarantee was not enforceable was reasonable. Because Familant has not provided a basis for all of the necessary elements of fraudulent inducement, summary judgment is denied.

### 3. Ambiguity

Familant asserts that the personal guarantee is void because it is vague and ambiguous on its face, and therefore cannot be given effect. (Doc. #67, p. 12.) As the Court has previously indicated, "[i]n Florida, it is a fundamental tenet of contract law that a phrase in a contract is ambiguous only when it is of uncertain meaning, and may be fairly understood in more ways than one. In the event of such an ambiguity, a trial court is authorized to admit parol evidence to explain the words used and

how the contracting parties intended them to be interpreted." <u>Solamy Investments, Ltd. v. Banco Santander S.A.</u>, 672 F.3d 981 (11th Cir. 2012)(quotation marks and internal citations omitted) <u>quoting</u> <u>Emergency Assocs. of Tampa, P.A. v. Sassano</u>, 664 So. 2d 1000, 1002 (Fla. 2d DCA 1995).  Plaintiffs have produced parole evidence concerning the language of the personal guarantee and its intended meaning.  (<u>See</u> <u>e.g.</u>, Doc. #61-7 pp. 23.)  For example, on July 20, 2011, Bocchino wrote an e-mail to Familant indicating that the letter of guarantee is a document that "states that you will live up to your end of the deal."  (Doc. #61-7, p. 10.)  Accordingly, the Court declines to grant summary judgment on the basis that the personal guaranty is vague or ambiguous on its face.

Accordingly, it is now

**ORDERED**:

Defendant, Len A. Familant's Dispositive Motion for Summary Judgment and Incorporated Memorandum of Law (Doc. #55) is **DENIED**.

**DONE AND ORDERED** at Fort Myers, Florida, this __23rd__ day of January, 2013.

_/s/ John E. Steele_
JOHN E. STEELE
United States District Judge

Copies:
Counsel of record

-18-